# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN KUHN,<br><br>              Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>              Defendant. | Case No. 1:22-cv-00966-SAB<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 15, 16, 17) |

## I.

## INTRODUCTION

Ryan Kuhn ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' cross-motions for summary judgment, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for the award of benefits or further proceedings, arguing: (1) The ALJ's RFC determination is not supported by substantial evidence because the mental portion of the RFC is inconsistent with the moderate

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (See ECF Nos. 4, 10, 11.)

limitations in concentration, persistence and pace found in the Psychiatric Review Technique and Dr. Starrett's opinion, and the ALJ failed to explain the limitations contained in the mental RFC and failed to provide a complete hypothetical to the vocational expert that incorporated all of Plaintiff's limitations; and (2) the ALJ erred by failing to develop the record and obtain an assessment of Plaintiff's physical limitations from a treating or examining source, as absent a medical opinion, the ALJ erroneously relied upon her own lay interpretation of the medical data, rendering the RFC unsupported by substantial evidence.

For the reasons explained herein, Plaintiff's motion for summary judgment shall be denied, Defendant's cross-motion for summary judgment shall be granted, and Plaintiff's social security appeal shall thus be denied.

**II.**

**BACKGROUND**

**A.    Procedural History**

On July 17 and 19, 2019, Plaintiff filed a Title II application for a period of disability insurance benefits, and a Title XVI application for supplemental security income benefits, each alleging a period of disability beginning on March 1, 2017.  (AR 230, 237.)  Plaintiff's applications were initially denied on November 25, 2019, and denied upon reconsideration on January 29, 2020.  (AR 109, 117.)  Plaintiff requested and received a hearing before Administrative Law Judge Charles Woode (the "ALJ").  (AR 123.)  Plaintiff appeared for a hearing before the ALJ on June 9, 2021.  (AR 15.)  On July 12, 2021, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 87-106.)  On April 27, 2022, the Appeals Council denied Plaintiff's request for review.  (AR 1-6.)

On August 3, 2022, Plaintiff filed this action for judicial review.  (ECF No. 1.)  On November 15, 2022, Defendant filed the administrative record ("AR") in this action.  (ECF No. 12.)  Following an extension of the briefing schedule, on February 28, 2023, Plaintiff filed an opening brief in support of summary judgment.  (Pl.'s Opening Br. ("Br."), ECF No. 15.)  On April 14, 2023, Defendant filed an opposition brief and motion for cross-summary judgment. (Def.'s Opp'n ("Opp'n"), ECF No. 16.)  On May 1, 2023, Plaintiff filed a reply.  (ECF No. 17.)

**B.      The ALJ's Findings of Fact and Conclusions of Law**

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, April 14, 2021:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since March 1, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: obesity; lumbar disc herniation with central spinal stenosis; status-post laminectomy and discectomy surgery; cannabinoid hyperemesis syndrome; gastroparesis; cyclical vomiting; major depressive disorder; posttraumatic stress disorder; somatic symptom disorder; and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs.  He cannot climb ladders, ropes or scaffolds.  He should avoid concentrated exposure to excessive vibration, and hazards such as unprotected heights and dangerous moving mechanical parts.  He can understand, remember, and carry out simple routine tasks.  He can have occasional contact with co-workers, supervisors, and the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 1, 1993 and was 23 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2017, through the date of this decision [July 12, 2021] (20 CFR 404.1520(g) and 416.920(g)).

(AR 90-101.)

## III.

## LEGAL STANDARD

### A.   The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[4]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1   as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's

2   physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049

3   (9th Cir. 2001).

4          At step five, the burden shifts to the Commissioner, who must then show that there are a

5   significant number of jobs in the national economy that the claimant can perform given her RFC,

6   age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d

7   1111, 1114 (9th Cir. 2006).   To do this, the ALJ can use either the Medical Vocational

8   Guidelines ("grids"), or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpt. P, App. 2;

9   Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).

10  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility,

11  resolving conflicts in medical testimony, and for resolving ambiguities.' " Ford, 950 F.3d at

12  1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

13         **B.      Standard of Review**

14         Congress has provided that an individual may obtain judicial review of any final decision

15  of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).

16  In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised

17  by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir.

18  2001).  Further, the Court's review of the Commissioner's decision is a limited one; the Court

19  must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42

20  U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is

21  relevant evidence which, considering the record as a whole, a reasonable person might accept as

22  adequate to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir.

23  2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995));

24  see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence

25  standard to the deferential clearly-erroneous standard).   "[T]he threshold for such evidentiary

26  sufficiency is not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means

27  more than a scintilla, but less than a preponderance; it is an extremely deferential standard."

28  Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal

quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

**IV.**

**DISCUSSION AND ANALYSIS**

Plaintiff presents two main challenges: (A) that the ALJ's RFC determination is not supported by substantial evidence because the mental portion of the RFC is inconsistent with the moderate limitations in concentration, persistence and pace found in the Psychiatric Review Technique and Dr. Starrett's opinion, and the ALJ failed to explain the limitations contained in the mental RFC and failed to provide a complete hypothetical to the vocational expert that incorporated all of Plaintiff's limitations; and (B) the ALJ erred by failing to develop the record and obtain an assessment of Plaintiff's physical limitations from a treating or examining source, as absent a medical opinion, the ALJ erroneously relied upon her own lay interpretation of the medical data, rendering the RFC unsupported by substantial evidence.

/ / /

/ / /

1

**A.    The Court finds the ALJ's RFC Determination Supported by Substantial Evidence and finds any Error Harmless as to Dr. Starrett's Opinion**

2

3      Plaintiff argues the ALJ's mental RFC is not supported by substantial evidence because it

4   is inconsistent with the moderate limitations of concentration, persistence and pace found in the

5   Psychiatric Review Technique and Dr. Starrett's opinion.

6      In the Psychiatric Review Technique ("PRTF") portion of the opinion, the ALJ found

7   Plaintiff has a moderate limitation in the area of concentrating, persisting or maintaining pace:

8              With regard to concentrating, persisting or maintaining pace, the
               claimant has a moderate limitation. The claimant has reported
9              problems with concentration and focus, and during one evaluation
               indicated he could only play a video game for 15 minutes before
10             losing concentration. However, he exhibited generally intact
               concentration during several examinations and evaluations (3F/11,
11             28-30; 13F/9). During his consultative examination, he was able to
               spell the word "world" forward and backward and he had adequate
12             effort during his examination (8F). He has not been treated for an
               attention-deficit disorder. The record as a whole shows the
13             claimant has moderate limitation in his concentration, persistence,
               or pace.

14

15   (AR 94.)  Dr. Starrett found Plaintiff's "ability to maintain adequate attention and persistence,

16   follow rule and routines, and pace is moderately limited," and that Plaintiff's "ability to interact

17   appropriately with supervisors, coworkers, and peers is moderately limited."  (AR 670.)  The

18   ALJ weighed Dr. Starrett's opinion as follows:

19             The opinion . . . is partially persuasive. He opined the claimant had
               no limitation working with simple, short instructions, mild
20             limitation in making simple decisions and working with detailed
               instructions, and moderate limitation in tasks involving complex
21             decisions, maintaining attention, persistence, or pace, and
               interacting with others. The limitations involving working with
22             instructions and making decisions are generally supported by his
               observations that the claimant had intact memory but had difficulty
23             performing the serial 7s test. However, the social and persistence
               limitations are unsupported by the examination, showing a
24             cooperative demeanor and adequate effort (8F). Similarly, the
               limitations involving simple tasks and decisions is generally
25             consistent with the claimant's reports of anxiety and depression,
               but the limitations involving social contact are inconsistent with
26             his cooperative demeanor with his treatment providers (13F/8-9,
               20). Further, his opinion is vague without specific vocational
27             limitations. As such, I find his opinion partially persuasive.

28   (AR 99.)

1   Despite the ALJ's findings in the PRTF portion that Plaintiff has such moderate

2   limitations, the ALJ nonetheless stated Dr. Starrett's moderate social and persistence limitations

3   were unsupported by the examination, and that the moderate limitations regarding social contact

4   were inconsistent with cooperative demeanor with treatment providers.   (AR 94, 99.)   As

5   Plaintiff argues, appears inconsistent with the weighing of Dr. Starrett's opinion.   The ALJ's

6   ultimate RFC determination included the following limitations: "[h]e can understand, remember,

7   and carry out simple routine tasks," and "[h]e can have occasional contact with co-workers,

8   supervisors, and the public."  (AR 95.)

9   Plaintiff emphasizes that "[e]ven under the new regulations, an ALJ cannot reject an

10   examining or treating doctor's opinion as unsupported or inconsistent without providing an

11   explanation supported by substantial evidence."  Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir.

12   2022).   As for the weighing of the above noted aspects of Dr. Starrett's opinion, Plaintiff argues

13   the ability to interact with medical professionals is not inconsistent with a moderate difficulty

14   with social interaction, particularly in a work environment; that the ALJ draws a false

15   equivalence between Plaintiff's ability to cooperate with treatment providers and the ability to

16   interact with coworkers and peers in a work environment; that Plaintiff's demeanor and effort on

17   examination fail to support the ALJ's conclusion regarding the supportability and consistency of

18   Dr. Starrett's opinion; and the fact that Plaintiff set forth adequate effort on examination says

19   nothing about his actual ability to persist on tasks, and the ALJ failed to logically connect this

20   evidence to his conclusion.  See Lopez v. Colvin, No. 1:14-CV-00495-JLT, 2015 WL 5008948,

21   at *7 (E.D. Cal. Aug. 20, 2015) ("[T]he ALJ fails to explain how Plaintiff's ability to interact

22   with his treatment providers on a one-on-one basis is inconsistent with the determination that

23   Plaintiff would have marked difficulties with interacting with co-workers, crowds, or the

24   public.").   Plaintiff also argues the ALJ failed to acknowledge that the social limitations in Dr.

25   Starrett's opinion are overwhelmingly consistent with Plaintiff's irritability and repeated

26   complaints of difficulty controlling his anger with regular outbursts, as detailed in Plaintiff's

27   summary of mental health treatment.

28   The Court accepts the general premise of Plaintiff's proffer that the ability to interact

with medical professionals in of itself may not form a proper basis for rejecting limitations concerning co-workers, crowds, or the public, depending on the totality of the opinion, the record, and the ALJ's findings.  See Lopez, 2015 WL 5008948, at *7.  However, the Court finds no error warranting remand here based on the totality of the opinion and record.

As Plaintiff highlights, SSR 96-8p provides guidance to the ALJ in that the findings of the PRTF are not an RFC, but rather "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF."  Frary v. Comm'r of Soc. Sec., No. 1:20-CV-00260-SAB, 2021 WL 5401495, at *8 (E.D. Cal. Nov. 18, 2021) (quoting SSR 96-8P).  Plaintiff argues that careful scrutiny of the ALJ's decision here reveals he failed to provide a more detailed assessment of these moderate limitations in concentration, persistence and pace and failed to craft a mental RFC that would reflect the most Plaintiff can do mentally given the evidence in the record.  The Court disagrees.

The Court does not find Plaintiff has established error under SSR 96-8P.  As the ALJ expressly acknowledged before turning to the RFC portion of the opinion, "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 . . . [t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning [and] [t]he following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis.  (AR 95.)  The Court finds the ALJ's analysis complied with SSR 96-8P (AR 95-99).  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("We will affirm the ALJ's determination of Bayliss's RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence . . . the ALJ took into account those limitations for which there was record support that did not depend on Bayliss's subjective complaints [and] [p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." (citing SSR 96–8p)).  For the

1   reasons explained below, the Court rejects Plaintiff's more specific arguments.

2        Plaintiff argues the ALJ erred by limiting Plaintiff to only simple tasks and failing to

3   explain why moderate limitations in concentration, persistence and pace are not further

4   incorporated.  See Lubin v. Comm'r of Soc. Sec. Admin., 507 F. App'x 709, 712 (9th Cir. 2013)

5   ("Although the ALJ found that Lubin suffered moderate difficulties in maintaining

6   concentration, persistence, or pace, the ALJ erred by not including this limitation in the residual

7   functional capacity determination or in the hypothetical question to the vocational expert . . .

8   [l]imiting Lubin 'to one to three step tasks due to pain and prescription drug/marijuana use' did

9   not capture the limitation in concentration, persistence, or pace found by the ALJ[;] [t]he work

10  described by the vocational expert may still require the speed and concentration Lubin lacks . . .

11  [t]he hypothetical question should have included Lubin's moderate limitations in concentration,

12  persistence, or pace [and] [b]ecause the ALJ's hypothetical question to the vocational expert did

13  not reflect all of Lubin's limitations, 'the expert's testimony has no evidentiary value to support a

14  finding that [Lubin] can perform jobs in the national economy.' " (quoting DeLorme v. Sullivan,

15  924 F.2d 841, 850 (9th Cir. 1991))); Woodward v. Colvin, No. ED CV 15-247-PLA, 2015 WL

16  8023227, at *7 (C.D. Cal. Dec. 4, 2015) ("In a published decision, one district court in the Ninth

17  Circuit recently found that a restriction to simple and repetitive tasks does not adequately

18  incorporate moderate limitations in concentration, persistence, or pace found at step two . . . [i]n

19  other unpublished opinions, the Ninth Circuit has held that when an ALJ finds a moderate

20  limitation in concentration, persistence or pace, he must include that limitation in a claimant's

21  RFC . . . [h]ere, the ALJ failed to provide an explanation as to how a restriction to simple and

22  repetitive unskilled work accounted for a mild to moderate limitation in concentration,

23  persistence, or pace [and] [t]hus it was error for the ALJ to fail to include plaintiff's mild to

24  moderate difficulties in concentration, persistence, or pace in the RFC.") (citations omitted).

25       Plaintiff also argues that in finding moderate concentration, persistence and pace in the

26  PRTF, the ALJ acknowledged Plaintiff's problems with focus, including that he could only pay

27  attention to stimulating tasks like video games for only 15 minutes (AR 94), but the ALJ then

28  merely noted that Plaintiff was not treated for an attention-deficit disorder, suggesting that no

1    other mental impairments could interfere with one's ability to concentrate, persist, and maintain

2    pace, and even though the ALJ acknowledges Plaintiff's distractibility and limitation in attention

3    (at times to no more than 15 minutes), no other explanation is provided as to why the record does

4    not support a greater level of specificity in the RFC concerning Plaintiff's moderate limitations

5    in concentration, persistence and pace.

6         The Court finds no harmful error here warranting remand.  First, as  Defendant

7    highlights, Plaintiff does not precisely challenge the ALJ's finding that he had moderate

8    limitations in his ability to interact with others, and to concentrate, persist, and maintain pace

9    (CPP), and instead argues that the social interaction limitation set out in consultative examiner

10   Dr. Starrett's medical opinion was consistent with the record, and that the RFC did not account

11   for the moderate CPP limitations in Dr. Starrett's opinion.  Significantly, while it is true that the

12   ALJ's assessment of Dr. Starrett's opinion, used language suggesting that the ALJ disagreed

13   with this moderate limitation,[5] the remainder of the decision makes clear that the ALJ *also*

14   concluded that Plaintiff was moderately limited in his ability to interact with others (AR 94, 99).

15   For the reasons explained below, the Court finds such internal inconsistency in the opinion is

16   harmless error at most, and does not warrant remand.  As Plaintiff acknowledges, the ALJ

17   assessed the same moderate limitation in this area and incorporated a restriction to no more than

18   occasional contact, in the RFC.  (AR 670.)  While Plaintiff also asserts the RFC did not account

19   for the moderate CPP limitations in Dr. Starrett's opinion, the Court concludes the ALJ

20   sufficiently incorporated that limitation into the RFC by limiting the type and complexity of

21   work Plaintiff could perform (AR 94, 95, 670).  See Stubbs-Danielson v. Astrue, 539 F.3d 1169,

22   1173-74 (9th Cir. 2008).

23        As for harmful error specifically, the Court considers Plaintiff's argument concerning the

24   vocational expert (the "VE"), and reliance on cases involving harmful error due to the inadequate

25

26   ─────────────
     [5]  The Court considers that the ALJ *could* find Dr. Starrett's specific finding of moderate limitation in social contact
     found, isolated to that opinion, to be unsupported or inconsistent, analyzing the opinion itself, its internal support,
27   and internal findings, and as compared to the overall record.  However, the Court assumes this was an error or
     internal inconsistency in the ALJ's opinion, however, because the ALJ ultimately found the RFC to have such
28   moderate limitations, any error is therefore harmless for the reasons explained herein.

1    presentation of limitations to the vocational expert.  Specifically, Plaintiff argues any error is

2    harmful because the VE testified that if a hypothetical individual would be likely to remain on

3    task no more than 85% of the workday, the individual would be unable to maintain any full-time

4    work, (AR 32-33); here the VE testified that should an individual be off task for even more than

5    10% of the workday due to their impairments or symptoms, there would be no jobs available

6    (AR 32-33), and therefore, the ALJ's failure to properly evaluate Plaintiff's moderate limitations

7    maintaining concentration, persistence, and pace is legal error, because the ALJ wholly failed to

8    logically connect this degree of impairment to a bare limitation to "simple routine tasks," in light

9    of the longitudinal record.  (Br. 16.)

10          The Court finds no harmful error.  Here, the ALJ's two hypotheticals presented to the

11   VE, the first pertaining to light exertional levels and the second to sedentary, both included the

12   following limitations: "can understand, remember, and carry out simple routine tasks [and] can

13   have occasional contact with coworkers, supervisors, and the public."  (AR 31-32.)  The Court

14   finds that based on the ALJ's findings here, including the moderate limitation in the RFC

15   determination, and the hypotheticals presented, there is no harmful error based on the Plaintiff's

16   cited caselaw.  See Turner v. Berryhill, 705 F. App'x 495, 498 (9th Cir. 2017) ("The ALJ also

17   did not err in the hypothetical questions posed to the vocational expert [and] [a]n RFC

18   determination limiting a claimant to 'simple, repetitive tasks' adequately captures limitations in

19   concentration, persistence, or pace where the determination is consistent with the restrictions

20   identified in the medical evidence." (quoting Stubbs-Danielson, 539 F.3d at 1174)); Whiteley v.

21   Kijakazi, No. 3:21-CV-00191-CLB, 2022 WL 13873385, at *5 (D. Nev. Oct. 21, 2022)

22   ("However, the issue in Lubin was that the ALJ did not include the moderate limitations in

23   concentration, persistence, or pace residual functional capacity determination *or* in the

24   hypothetical question to the VE . . . [t]herefore, Lubin is distinguishable from the instant case

25   because the ALJ did include a restriction to work that is routine and repetitive in the hypothetical

26   question posed to the VE."); Gonsalves v. Comm'r of Soc. Sec., No. 2:15-CV-0940-TLN-CMK,

27   2017 WL 698279, at *8 (E.D. Cal. Feb. 22, 2017) ("As in Stubbs-Danielson, here the ALJ

28   acknowledged plaintiff has mental limitations, especially related to his concentration abilities,

but based on medical opinion he nevertheless found plaintiff capable of performing simple, routine tasks . . . the ALJ accepted Dr. Ochitill's opinion wherein he opined that despite plaintiff's limitations, he maintained the ability to perform simple, repetitive work . . . [t]hus as the ALJ did in <u>Stubbs-Danielson</u> . . . the ALJ in this case concluded that the plaintiff, despite deficiencies in his concentration and social functioning abilities, retained the ability to do simple, repetitive, routine tasks [and] [t]he ALJ incorporated these limitations, supported by medical opinion, into plaintiff's RFC and into the hypothetical posed to the VE."); <u>Elmore v. Colvin</u>, 617 F. App'x 755, 758 (9th Cir. 2015) ("While "ALJ stated that it gave Dr. Duvall's opinion 'great weight as it is consistent with the overall record[,]' [s]till, Elmore argues that the ALJ erred by failing to incorporate two aspects of his opinion into the residual functional capacity: (1) his statement that Elmore has issues sustaining attention and concentration; and (2) his statement that Elmore has symptoms of agoraphobia that keep him at home[,] [h]owever [w]e disagree [as] [w]ith respect to the first statement, the ALJ did not err by 'translat[ing] ... pace and mental limitations, into the only concrete restrictions available to him—[a] recommended restriction to simple tasks . . . [and] [w]ith respect to the second statement, Dr. Duvall did not assign 'any specific limitations' based on Elmore's agoraphobia, so there was nothing for the ALJ to incorporate into the residual functional capacity." (first quoting <u>Stubbs–Danielson</u>, 539 F.3d at1174; then quoting <u>Turner v. Comm'r of Soc. Sec.</u>, 613 F.3d 1217, 1223 (9th Cir. 2010))).

Thus, the Court finds Plaintiff's harmful error argument unpersuasive. <u>See</u> <u>Turner</u>, 705 F. App'x at 498 ("As the RFC determination was consistent with Dr. Barrons' opinion, the ALJ did not err in posing hypothetical questions to the vocational expert regarding a claimant with an RFC of 'no physical limitations but [ ] limited to performing only simple, routine, or repetitive tasks with occasional public contact,' without separately mentioning Turner's moderate difficulties in concentration, persistence, or pace.").

Plaintiff in reply argues that a mere limitation to simple tasks is not a catch-all for moderate limitations in concentration, persistence, and pace, <u>Lubin</u>, 507 F. App'x at 712, and similarly, the ability to understand, remember, and carry out short simple instructions is consistent with a limitation to simple tasks, but again fails to indicate an ability to sustain

1   persistence and pace in those tasks, and that the ALJ's own reasoning distinguishes the facts of

2   this case from the cases relied upon in Defendant's brief because the terms of Dr. Starrett's

3   opinion and the ALJ's weighing of that opinion specifically indicate that a moderate limitation in

4   persistence was not accommodated by a limitation to simple work.  Plaintiff contends that both

5   Dr. Starrett and the ALJ considered the ability to carry out simple tasks and the ability to sustain

6   persistence in those tasks are separate, and the RFC explicitly accounts only for task complexity.

7           The Court agrees with Defendant that Plaintiff's reliance on Lubin is not convincing

8   because that case is factually distinguishable, as there, the opinion evidence indicated the

9   claimant had significant mental limitations, including an *inability* to maintain persistence and

10  pace.  See Lubin, 507 F. App'x at 710-12.  Here, in contrast, Dr. Starrett found that Plaintiff had

11  no more than moderate limitations in concentration and persistence and that Plaintiff

12  nevertheless, could still understand, remember, and carry out short and simplistic instructions.

13  (AR 670-71.)  Thus, Dr. Starrett's medical opinion here supported the ALJ's RFC.  (AR 95.)

14          More importantly and generally, the Ninth Circuit "has upheld determinations that

15  claimants with moderate mental limitations are capable of doing simple unskilled work."

16  Withrow v. Colvin, 672 F. App'x 748, 749 (9th Cir. 2017) (citing Valentine v. Comm'r Soc. Sec.

17  Admin., 574 F.3d 685, 690 (9th Cir. 2009); Stubbs–Danielson, 539 F.3d at 1173–74).  The Court

18  finds the ALJ accounted for Plaintiff's limitations by both limiting the type and complexity of

19  the work Plaintiff could do (*i.e.*, simple routine tasks).  (AR 95.)  According to Dr. Starrett's

20  opinion, Plaintiff had a moderate limitation in concentrating, persisting, and maintaining pace,

21  such that he was moderately limited in his ability to understand, remember and carry out

22  complex instructions – but he retained an unlimited ability to understand, remember, and carry

23  out simple instructions.  (AR 670-71.)  In accord with this opinion, the ALJ similarly limited

24  Plaintiff to simple, routine tasks.  (AR 95.)  Based on the above record, the Court does not find

25  the cases cited by Plaintiff convincing as applied to these facts.  See Stubbs-Danielson, 539 F.3d

26  at 1174 ("The ALJ translated Stubbs–Danielson's condition, including the pace and mental

27  limitations, into the only concrete restrictions available to him—Dr. Eather's recommended

28  restriction to 'simple tasks[,]' [which] does not . . . constitute a rejection of Dr. McCollum's

opinion [as] Dr. Eather's assessment is consistent with Dr. McCollum's 2005 MRFCA, which found Stubbs–Danielson is 'not significantly limited' in her ability to 'carry out very short simple instructions,' 'maintain attention and concentration for extended periods,' and 'sustain an ordinary routine without special supervision[,]' [and] [a]s two of our sister circuits have recognized, an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony.").

This conclusion is in line with the previous holdings of this Court. See Clark v. Comm'r of Soc. Sec., No. 1:16-CV-00437-SAB, 2017 WL 2671080, at *11 (E.D. Cal. June 21, 2017) ("Moderate limitations in concentration, persistence and pace are sufficiently accounted for by limiting a plaintiff to simple repetitive tasks . . . [i]n Stubbs-Danielson, the Ninth Circuit found that limiting the plaintiff to simple, routine, repetitive work properly incorporated moderate limitations related to pace, concentration, attention, and adaption."); Perez v. Comm'r of Soc. Sec., No. 1:19-CV-01235-SAB, 2020 WL 4430656, at *8 (E.D. Cal. July 31, 2020) ("Contrary to Plaintiff's assertion, Stubbs-Danielson does not stand for the proposition that finding a claimant to have moderate limitations at step two would belie a finding that the claimant can perform more than simple repetitive work."); Jones v. Comm'r of Soc. Sec., No. 1:13-CV-01135-SAB, 2014 WL 2957454, at *11 (E.D. Cal. June 30, 2014) ("However, Stubbs–Danielson made clear that moderate limitations are captured in the limitation to simple repetitive tasks where the assessment is consistent with the restrictions identified in the medical record."); Neri v. Comm'r of Soc. Sec., No. 1:21-CV-01235-SAB, 2022 WL 16856160, at *9 n.12 (E.D. Cal. Nov. 10, 2022) ("To this point, the Court additionally notes the Ninth Circuit has repeatedly held that a limitation to unskilled work, i.e., 'work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time', 20 C.F.R. §§ 404.1568; 416.968, adequately encompasses a claimant's 'moderate' mental RFC limitations." (citing Thomas, 278 F.3d at 953, 955, 958; Stubbs-Danielson, 539 F.3d at 1169; Sabin v. Astrue, 337 Fed. App'x. 617, 620–21 (9th Cir. 2009))); Vang v. Comm'r of Soc. Sec., No. 1:21-CV-00488-SAB, 2022 WL 17812859, at *14 (E.D. Cal. Dec. 19, 2022) ("The Ninth Circuit has determined limitations to such "simple"

1   work sufficiently addresses "moderate" mental limitations.").

2        Accordingly, for the above stated reasons, the Court finds the ALJ's mental RFC

3   supported by substantial evidence, and any error concerning the weighing of Dr. Starrett's

4   opinion in relation to the RFC determination and the Psychiatric Review Technique, to be only

5   harmless error.  Plaintiff has therefore not demonstrated any error warranting remand based on

6   Plaintiff's first challenge.  The Court now turns to Plaintiff's second challenge to the ALJ's

7   decision.

8        **B.    The Court Finds the ALJ did not Fail to Develop the Record**

9        Generally, "[t]he claimant has the burden of proving that [he] is disabled."  Smolen, 80

10  F.3d at 1288.  However,  "[t]he ALJ always has a 'special duty to fully and fairly develop the

11  record and to assure that the claimant's interests are considered . . . even when the claimant is

12  represented by counsel."  Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting Brown

13  v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).  However, "[w]hen a claimant is not represented

14  by counsel, this responsibility is heightened."  Id.  This is because "Social Security proceedings

15  are inquisitorial rather than adversarial."  Schiaffino v. Saul, 799 Fed. App'x 473, 476 (9th Cir.

16  2020) (quoting Sims v. Apfel, 530 U.S. 103, 111–12 (2000)).  In particular, the ALJ's duty to

17  develop the record fully is heightened where the claimant may be mentally ill and thus unable to

18  protect his own interests.  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing

19  Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir. 1992)).

20       "An ALJ's duty to develop the record further is triggered only when there is ambiguous

21  evidence or when the record is inadequate to allow for proper evaluation of the evidence."

22  Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001); Bayliss, 427 F.3d at 1217 (citing 20

23  C.F.R. §§ 404.1512(e), 416.912(e)); see also Brown v. Berryhill, 697 Fed. App'x 548, 549 (9th

24  Cir. 2017) ("Because the record evidence was not ambiguous and the record was sufficient to

25  allow for proper evaluation of the evidence, the ALJ was not required to re-contact Brown's

26  doctors or further develop the record.").

27       Plaintiff contends the ALJ relied on medical opinions that did not consider all of

28  Plaintiff's severe impairments.  Specifically, Plaintiff argues the ALJ relied on the opinion from

1   Dr. Amado to formulate the RFC, noting the opinion was supported by "the claimant's obesity,

2   negative intestinal testing, normal gait, and unremarkable examination of his spine," (AR 98),

3   however, Dr. Amado's opinion was rendered without access to significant records documenting

4   Plaintiff's severe and persistent abdominal disorders.  (AR 78-80.)  Plaintiff highlights that

5   unlike the ALJ, Plaintiff's inflammatory bowel disease was not found severe in the state agency

6   physician's evaluation, and it was noted "the evidence in the file is insufficient to rate all of the

7   allegations." (AR 80, 82-83.)  Plaintiff contends these opinions make no mention of Plaintiff's

8   persistent, unrelenting abdominal pain with nausea, vomiting, diarrhea, and severe weight loss,

9   and did not narrate any explanation as to how those impairments may further limit Plaintiff's

10  functioning.  While contrary to these assessments, the ALJ found Plaintiff suffers the severe

11  impairments of gastroparesis and cyclical vomiting, Plaintiff emphasizes the record lacks any

12  opinion from any medical source assessing the functional impact of Plaintiff's abdominal pain

13  and related symptoms, and therefore the ALJ therefore failed to develop the record regarding

14  these impairments.

15      Defendant first argues the Plaintiff has forfeited the argument based on the duty to develop

16  the record, as: Plaintiff's counsel at the hearing failed to ask the ALJ to develop the record further;

17  the Plaintiff has the burden to prove disability; and counsel asked the ALJ to keep the record open for

18  14 days, but did not contend the record was incomplete.  (AR 19-20.)  Defendant's argument has

19  some weight because, most significantly, Defendant notes the ALJ hearing was held on June 9, 2021

20  – postdating by months the records that supposedly triggered the ALJ's duty to develop the record –

21  and counsel still did not assert that any further medical opinions were necessary at the hearing.  See

22  Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) ("We now hold that, at least when claimants

23  are represented by counsel, they must raise all issues and evidence at their administrative hearings in

24  order to preserve them on appeal."); Duenas v. Shalala, 34 F.3d 719, 722 (9th Cir. 1994) ("Following

25  a hearing before the ALJ, counsel for Duenas specifically undertook to develop further information

26  concerning Duenas' employers and was unsuccessful [but] [n]o request was made of the ALJ to

27  develop the record, and it is unclear what further the ALJ could have done in the absence of an

28  identification of the alleged employers.").  However, the Court  does not find Defendant's cases

directly on point in the face of other standards governing the duty to develop the record, at least in that the Court would not rest any decision on waiver or forfeiture of the issue.  See Vasquez v. Comm'r of Soc. Sec., No. 1:18-CV-01042-EPG, 2019 WL 3714565, at *3 (E.D. Cal. Aug. 7, 2019) ("Nor is it analogous to the situation in Meanel, which concerned new statistical evidence not available to the ALJ . . . Mr. Vasquez is not presenting additional evidence or information not available to the ALJ[,] [t]hus the reasoning given in Shaibi and Meanel, that the ALJ is in the best position to resolve conflicts of evidence, does not apply here [and] [a]dditionally, the circumstances set forth in Shaibi do not clearly apply where the ALJ has an independent duty, as it does with the duty to develop the record." (citing Shaibi v. Berryhill, 883 F.3d 1102, 1109 (9th Cir. 2017))).

Turning to the substance of the Plaintiff's argument, Defendant suggests Plaintiff's premise is flawed and unsupported in law, and has been rejected in this district because it would require an ALJ to order a consultative examination or call a medical expert in every single case. The Court finds in accord with this general proposition.  See, e.g., Hogan v. Kijakazi, No. 1:20-CV-01787-SKO, 2022 WL 317031, at *11 (E.D. Cal. Feb. 2, 2022)[6] ("Plaintiff's argument appears to be predicated on the incorrect assumption that, as a matter of law, an ALJ is unqualified to independently interpret any medical records post-dating the agency physicians' review [but] [p]ractically speaking, the very nature of the administrative review process unavoidably results in a gap in time (often a lengthy one) between the agency physicians' reviews and the ALJ's hearing decision[,] [d]uring that gap in time, claimants routinely continue their course of treatment for their conditions, generating new records [and] [a]ccepting Plaintiff's argument would mean that the ALJ is always precluded from reviewing such records and must obtain a consultative examination in essentially every case . . . there is no such legal requirement absent evidentiary ambiguity or the presence of pertinent medical records unsusceptible to lay

---

[6] The Court acknowledges Hogan is somewhat different in that it appears the state agency physicians did consider the specific ailments, and instead the claimant argued for a consultative exam.  Hogan, 2022 WL 317031, at *10 ("While it is undoubtedly true that an ALJ may not render an RFC determination without the aid of a medical opinion, the record does contain a medical opinion, namely the opinions of the non-examining state agency consultants (Drs. Mohan and Scott) who reviewed Plaintiff's medical file  . . . Dr. Mohan reviewed evidence of Plaintiff's foot ulcers and diabetic neuropathy . . . Dr. Scott also reviewed Plaintiff's medical records which contained evidence of Plaintiff's foot ulcers, leg swelling, diabetic neuropathy, and shoulder pain [and] [t]hus, Drs. Mohan and Scott were aware of Plaintiff's impairments, and determined Plaintiff could perform light work notwithstanding his impairments.").

1   understanding."); <u>Corwin v. Kijakazi</u>, No. 1:20-CV-00394-GSA, 2021 WL 5771658, at *6 (E.D.

2   Cal. Dec. 6, 2021) ("Plaintiff's argument is belied by the fact that there is always a gap in time

3   between the non-examining DDS physician's review at the initial/reconsideration levels and the

4   ALJ's subsequent hearing decision, and claimants routinely continue pursuing care in the interim

5   thereby generating new medical records.  If the mere passage of time and presence of additional

6   medical evidence in the record established ambiguity, a consultative examination would be

7   required in every case . . . such cases do not purport to establish (nor would they be controlling if

8   they did) a rule of general applicability that an ALJ must obtain an examining opinion in every

9   case before rendering an RFC determination.").

10       Plaintiff replies that he is not arguing that the passage of time warrants new opinion

11   evidence, but the ALJ errs by relying upon opinions that predate evidence of new medical

12   conditions or significant worsening in a claimant's condition.  Plaintiff argues the ALJ's own

13   concession that the DDS opinion did not consider all of Plaintiff's medical impairments triggered

14   the ALJ's duty to obtain a new opinion.

15       Based on the totality of the record here and the ALJ's opinion, the Court does not find the

16   ALJ's duty was triggered here.  The ALJ based his finding that Plaintiff could perform a reduced

17   range of light work on an administrative record that was almost 1,000 pages long, including over

18   600 pages of treatment notes and prior administrative medical findings ("PAMFs").   As

19   Defendant notes, these PAMFs did consider Plaintiff's symptoms of nausea, vomiting, diarrhea,

20   and weight loss (AR 65, 78, 64, 66, 82; Pl's Br. at 16); Dr. Amado reviewed these symptoms and

21   still recommended an RFC for a reduced range of light work, similar to the one assessed by the

22   ALJ (AR 95, 68-70); and therefore Plaintiff's claim that there was no medical opinion as to the

23   functional impact of Plaintiff's abdominal pain and related symptoms, is not availing.  The Court

24   agrees with Defendant that Plaintiff's claim that Dr. Amado did not explain how these symptoms

25   "may further limit [his] functioning" is nothing more than an assumption that there were

26   additional (unspecified) limitations to explain, and the claim that the ALJ did not address these

27   symptoms or explain the RFC, is untrue.  (<u>See</u> AR 95-99 (addressing these symptoms, imaging,

28   conservative treatment, objective findings, and records showing no evidence of motor weakness,

1  and how the RFC's environmental limitations accounted for the symptoms).)  The Court  finds

2  additional support for Defendant's argument that Plaintiff's attempt to distinguish between the

3  irritable bowel disease mentioned in Dr. Amado's PAMFs and the gastroparesis that the ALJ

4  considered, is of limited relevance because Plaintiff has not identified any symptoms from his

5  gastroparesis that was not considered in the PAMFs, and Dr. Amado considered Plaintiff's

6  symptoms and still found that he was capable of a reduced range of light work.  For these

7  reasons, the Court does not find error warranting remand in order to develop the record.  See

8  Hogan, 2022 WL 317031, at *11 ("[T]he ALJ determined that the agency medical consultants'

9  findings that Plaintiff could occasionally reach overhead were not supported in light of the

10  subsequent medical records showing a worsening of his shoulder conditions. To account for this

11  worsening range of motion in Plaintiff's shoulders, the ALJ adopted a further restriction of no

12  overhead reaching. (AR 40.) The ALJ did not make a medical finding, and instead made an

13  administrative finding regarding Plaintiff's ability to perform basic work functions given his

14  medical impairments, which is specifically a determination reserved to the ALJ."); Ford v. Saul,

15  950 F.3d 1141, 1156 (9th Cir. 2020) (as an ALJ's duty to develop the record further is triggered

16  only when there is ambiguous evidence or when the record is inadequate to allow for proper

17  evaluation of the evidence, "[g]iven that the ALJ had years of Ford's mental health records and

18  multiple opinions from non-examining psychiatrists to inform her decision, this duty was not

19  triggered.").

20       The facts in this case are not similar to other instances in which the ALJ was found to

21  have a duty to further develop the record.  See Tonapetyan, 242 F.3d at 1150-51 (ALJ erred by

22  relying on testimony of physician who indicated more information was needed to make

23  diagnosis); McLeod, 640 F.3d at 887 (ALJ erred by failing to obtain disability determination

24  from the Veteran's Administration); Bonner v. Astrue, 725 F.Supp.2d 898, 901-902 (C.D. Cal.

25  2010) (ALJ erred where failed to determine if claimant's benefits were property terminated or

26  should have been resumed after his release from prison); Hilliard v. Barnhart, 442 F.Supp.2d

27  813, 818-19 (N.D. Cal. 2006) (ALJ erred by failing to develop record where he relied on the

28  opinion of a physician who recognized he did not have sufficient information to make a

1     diagnosis).  In sum, the ALJ was not required to adopt the findings or opinion of any of the

2     physicians but rather was required to determine the RFC based on all of the evidence in the

3     record.  See 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources

4     on issues such as . . . your residual functional capacity . . . the final responsibility for deciding

5     these issues is reserved to the Commissioner."); Rounds v. Comm'r of Soc. Sec., 807 F.3d 996,

6     1006 (9th Cir. 2015) ("the ALJ is responsible for translating and incorporating clinical findings

7     into a succinct RFC"); Vertigan, 260 F.3d at 1049 ("It is clear that it is the responsibility of the

8     ALJ, not the claimant's physician, to determine residual functional capacity.").  Turning again to

9     SSR 96-8p, the ruling provides that the "RFC assessment must be based on *all* of the relevant

10    evidence in the case record, such as": medical history; medical signs and laboratory findings; the

11    effects of treatment, including limitations or restrictions imposed by the mechanics of treatment

12    (e.g., frequency of treatment, duration, disruption to routine, side effects of medication); the

13    reports of daily activities; lay evidence; recorded observations; medical source statements;

14    effects of symptoms, including pain, that are reasonably attributed to a medically determinable

15    impairment; evidence from attempts to work; need for a structured living environment, and work

16    evaluations, if available.

17          Based on the applicable caselaw and regulations before the Court, the Court concludes

18    the ALJ's RFC assessment to be based on substantial evidence in the record, and Plaintiff has not

19    demonstrated that the ALJ erred by failing to further develop the record.  See Smolen, 80 F.3d at

20    1279 (substantial evidence more than a scintilla, but less than a preponderance); Burch, 400 F.3d

21    at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's

22    conclusion that must be upheld.").  Indeed, there is "a presumption that ALJs are, at some level,

23    capable of independently reviewing and forming conclusions about medical evidence to

24    discharge their statutory duty to determine whether a claimant is disabled and cannot work."

25    Farlow v. Kijakazi, 53 F.4th 485, 488 (9th Cir. 2022); Tommasetti, 533 F.3d at 1041–42 ("[T]he

26    ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); Batson,

27    359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences

28    reasonably drawn from the record . . . and if evidence exists to support more than one rational

interpretation, we must defer to the Commissioner's decision.") (citations omitted).

## V.

### CONCLUSION AND ORDER

In conclusion, the Court rejects the Plaintiff's challenges and finds no error warranting remand of this action.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is DENIED, Defendant's cross-motion for summary judgment is GRANTED, and Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Ryan Kuhn.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **June 14, 2023**

UNITED STATES MAGISTRATE JUDGE